**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DISTEFANO WEBSITE INNOVATIONS, LLC,** | |
| Plaintiff, | Civil Action No.: _____ |
| v. | **JURY TRIAL DEMANDED** |
| **BYTEDANCE LTD., BYTEDANCE PTE. LTD., TIK TOK LTD., and HELIOPHILIA PTE. LTD.** | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DiStefano Website Innovations, LLC ("DiStefano") files this Complaint against ByteDance Ltd., ByteDance Pte. Ltd., (collectively, "ByteDance"), TikTok Ltd., ("TikTok") and Heliophilia Pte. Ltd., (all collectively, "Defendants") and alleges the following:

**INTRODUCTION**

1.      This is a patent infringement action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., of asserted DeStefano Patents identified as U.S. Patent Nos. 11,763,316 (the "'316 Patent") (Exhibit 1); RE45,971 (the "'971 Reissue Patent") (Exhibit 2); 8,996,398 (the "'398 Patent") (Exhibit 3); 8,589,222 ("'222 Patent") (Exhibit 4); and 8,412,570 ("'570 Patent") (Exhibit 5) (collectively, the "Patents-in-Suit").

1

**THE PARTIES**

2.      Plaintiff Distefano is a limited liability company organized under the laws of the State of Florida with a place of business in this District located at 112 East Oak Street, Suite L1, Palestine, TX 75801.

3.      Defendants admit:

. . . ByteDance, Ltd. ("ByteDance") is a global company incorporated in the Caymen Islands, with offices in the United States, China, Singapore, and the United Kingdom, among others.  ByteDance owns and operates a variety of mobile software applications that enable people around the world to connect with, consume, and create entertainment content, including TikTok.  ByteDance also owns and operates other applications that are available in the United States, such as CapCut, a video editing application; Lark, a collaboration and communications software product and GoGoKid, a platform for individuals in the United States – many of them teachers – to provide English-language lessons to students in China.

*TikTok Inc. and ByteDance Ltd. v. Donald J Trump, et al.*, Civil No. 1:20-cv-2658, Dkt. 1, ¶ 13 (D.D.C. Sept. 20, 2020).

4.      On information and belief, Defendant ByteDance Ltd. is a Chinese corporation headquartered in Beijing, China and legally domiciled in the Cayman Islands.  ByteDance Ltd. has regular and established places of business at Dazhongsi Square No. A18, West Beisanhuan Road, Haidian District, Beijing China and 228, 2nd Floor, Building 1, No. 23 Courtyard A, North Third Ring Road West, Haidian District, Beijing China.  ByteDance Ltd. has a legal address in the Cayman Islands located at Vistra (Cayman) Limited, P.O. Box 31119, Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman, George Town, KY1-1205, Cayman Islands.  ByteDance may be served with Process through the Hague Convention.

2

5.      On information and belief, Defendant ByteDance Pte. Ltd. is a Singapore Corporation, having its principal place at 1 Raffles Quay, #26-10, Singapore, 048583, and/or 8 Marina View Level 43, Asia Square Tower 1, Singapore, 018960.

6.      On information and belief, Defendant TikTok Ltd. has a principal place of business at Vistra (Cayman) Limited, P.O. Box 31119, Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman, George Town, KY1-1205, Caymen Islands.

7.      On information and belief, Defendant Heliophilia Pte. Ltd. is a Singapore Corporation, having its principal place at 1 Raffles Quay, #26-10, Singapore, 048583, and/or 8 Marina View Level 43, Asia Square Tower 1, Singapore, 018960.[1] .

8.      On information and belief, Defendants ByteDance Pte. Ltd., TikTok Ltd., and Heliophilia Pte. Ltd. are wholly owned subsidiaries of Defendant ByteDance Ltd. as evidenced by the below-reproduced Corporate Structure[2] chart:

---

[1] *See* https://fortune.com/2023/04/05/tiktoks-lemon8-new-app-instagram-pinterest-photos/ ("Both the Apple and Google Play app stores list its owner as Heliophilia Pte. Ltd., a Singapore-based company that shares the same address as ByteDance and TikTok") (last visited October 29, 2024).

[2] https://www.bytedance.com/en/ (last visited October 29, 2024).



## JURISDICTION

9.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. §1, *et seq.*

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a).   This Court has personal jurisdiction over Defendants. Defendants maintain continuous and systematic contacts within this District by selling, and offering for sale products, and/or services that infringe the Patents-in-Suit to customers within this District and the State of Texas.

11.     Thus, Defendants have purposefully availed themselves of the privilege of conducting business within this District and the State of Texas.

12.     This Court has specific personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because the Defendants, directly or through intermediaries,

having conducted and continue to conduct substantial business in this forum, including but not limited to:  (i) engaging in at least part of the alleged infringing acts; (ii) purposefully and voluntarily placing one or more infringing products or services into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this forum; and/or (iii) regularly conducting or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this District and the State of Texas.

13.    On information and belief, Defendants directly or indirectly participate in the stream of commerce that results in products and services, including those accused of infringement in this Complaint, being made, used, sold and/or offered for sale to customers and potential customers located in Texas and this District, and/or imported into the United States to the State of Texas.

14.    On information and belief, Defendants, Defendants' agents, and/or Defendants' subsidiaries distribute products directly to customers through their partners and/or intermediaries located in this District.

15.    On information and belief, Defendants derive significant financial benefits through their business in Texas and this District.

16.    On information and belief, the TikTok App ("TikTok App") has been downloaded over 220 million times within the United States, with millions of those users of Defendants' products and services within the State of Texas, many of whom reside in this District.

## VENUE

17.    Venue is proper in this District pursuant to 28 U.S.C. §§1391(b), (c), and 1400(b) because, *inter alia*, Defendants are subject to personal jurisdiction in this District, Defendants conduct a substantial amount of business in this District and have committed acts of patent

infringement in this District, and Defendants are not a resident of the United States and may be sued in any judicial district.

18.     On information and belief, Defendant TikTok Ltd. is owner of the TikTok App.

19.     "More than 150 million people in the United States use TikTok [App] on a monthly basis."[3]

20.     In February 2022, Defendant TikTok Ltd. was reported to have signed a 125,000 square foot lease at 300 Colorado St. in Austin, Texas.[4]

21.     In September 2023, TikTok began a $17 million construction of four floors of the tower.[5]

22.     In March 2024, Defendant TikTok Ltd. was reported to begin phase 2 of a $12M buildout of office space in Austin tower.[6]

23.     In July 2022, Defendant TikTok instituted a $1.5-billion initiative titled "Project Texas" in cooperation with Austin-based cloud company Oracle.[7]  Project Texas is TikTok's plan to address cybersecurity concerns raised by U.S. federal and state governmental officials believing that

---

[3] Written testimony of Shou Chew, Chief Executive Officer of Defendant TikTok Ltd., before the U.S. House Committee on Energy and Commerce on March 23, 2023.     Available at https://d1dth6e84htgma.cloudfront.net/Written_Testimony_of_Shou_Chew_c07504eccf_084e8683 f3.pdf (last visited October 29, 2024).

[4] https://www.commercialsearch.com/news/tiktok-inks-major-lease-in-austin/ (last visited October 29, 2024).

[5] *Id.*

[6]  https://www.mysanantonio.com/business/article/tiktok-austin-offices-19351893.php (last visited October 29, 2024).

[7] https://www.texasmonthly.com/news-politics/tiktok-us-ban-china-project-texas-oracle/     (last visited October 29, 2024); https://usds.tiktok.com/usds-about/ (last visited October 29, 2024).

China's national security laws required any company doing business in China to make its data accessible to the Chinese government.

24.    Project Texas is ". . . a massive, $1.5-billion corporate restructuring plan aimed at instilling American confidence in TikTok's operations and security."  February 23, 2023, *Texas Monthly*, "How is TikTok Planning To Avoid a U.S. Ban? Enter 'Project Texas.'"  (Exhibit 6).

25.    On information and belief, "Under Project Texas, TikTok's American operations would be siloed and monitored by an in-house committee called TikTok U.S. Data Security – leadership for which would be approved by the U.S. Government."  *Id*.

26.    On information and belief, "Additionally, Oracle would be able to review TikTok's code and software in 'transparency centers," and monitor global data flows necessary to allow U.S. TikTok users to engage with the app's international content." *Id*.

27.    As of early 2023, on information and belief, "Only some portions of Project Texas have been enacted – most notably the transference of all U.S. user data to Oracle's cloud infrastructure, intended to keep user data from ever leaving the U.S." *Id*.

28.    TikTok's major partner in Project Texas is Oracle Corporation, headquartered in Austin, Texas.  In 2020, Oracle Corporation was chosen as TikTok's secure cloud technology provider and took a 12.5 percent equity stake in TikTok.  September 19, 2020, Oracle press release (Exhibit 7).

29.    On information and belief, the personal data and information of every TikTok App user in the country is being stored on servers owned by Oracle Corporation.

30.     As of March 2024, Defendant TikTok Ltd. has more than 50 job openings listed for Austin, Texas.[8]

31.     As of October 2024, Defendant TikTok Ltd. had more than 47 job openings listed for Austin, Texas. [9]

32.     TikTok Ltd. and ByteDance Ltd. are foreign corporations, and venue is proper in this District pursuant to 28 U.S.C. §1391(c)(3) because foreign defendants are subject to venue in any district in the United States.

## BACKGROUND

### I.     Inventor and Technology Background

33.     Thomas DiStefano III, inventor of the Patents-in-Suit, recognized the importance of the internet while publishing his first website, www.theup-tick.com, in 1996.  As a self-taught programmer without a computer science background, DiStefano realized how difficult it was for a layperson to create his or her own websites and web pages.

34.     As stated in U.S. Patent No. 11,763,316, "[t]he World Wide Web (web) has rapidly become an invaluable tool to individuals and businesses," but "the average individual has little or no knowledge about how to create a web page [and] does not know how to create an HTML document or to post that document to a server computer."  Exhibit 1, Col. 1:33-34, 2:4-8.

---

[8] https://www.indeed.com/jobs?q=tiktok&l=texas&sc=0kf%3Afcckey%2848f2950bf089713f%29%3B&vjk=e4d0efe780e882e7                 (last         visited         July         4,         2024); https://careers.tiktok.com/position?keywords=&category=&location=CT_247&project=&type=&job_hot_flag=&current=1&limit=10&functionCategory=&tag= (last visited July 4, 2024).

[9] https://careers.tiktok.com/position?keywords=&location=CT_247 (last visited October 29, 2024).

35.     The recognition of these and other problems drove DiStefano's multi-year process of inventing the technologies described in the Patents-in-Suit—many of which were incorporated in the website, www.mystickyweb.com, which was launched by DiStefano on June 8, 2000.

36.     All told, the United States Patent and Trademark Office ("USPTO") has issued 16 patents to DiStefano.

37.     The specifications of the Patents-in-Suit, as a whole, present DiStefano's approaches to improving the technology by which websites/web pages are created and posted on the World Wide Web.  The Patents-in-Suit describe how a user, with little computer background, can create his or her own websites/web pages using the described tools without the need for separate web page development services.  As part of creating this system, DiStefano identified many types of features that users may desire in creating their own websites.  For example, a user may want to add content (e.g., text/images/audio) to a website/web page and/or want to be able to edit existing text/images.

38.     One particular feature addressed by the Patents-in-Suit is the creation of reciprocal links between websites/web pages.  The terms *link* and *hyperlink* are often used interchangeably.[10]

39.     In operation, a link is a specific type of computer code, which when activated causes the reading device (e.g., an internet browser) to retrieve data (e.g., a web page) found at a location indicated by the link.

40.     If the retrieved data is a web page, for example, the web page is then displayed by the reading device.[11]

---

[10] *See* https://en.wikipedia.org/wiki/Hyperlink.

[11] *Id.*

41.    As another example, if the retrieved data is a music file, the reading device can cause the music file to be played.[12]

42.    The term hyperlink is also associated with a URL (Uniform Resource Locator) as the URL is a target of the hyperlink.

43.    Consistent with its name, a URL not only identifies a resource but also identifies a location of the resource.[13]  A URL is the best-known subset of a URI (Uniform Resource Identifier), and the terms URI and URL are also often used interchangeably.[14]

44.    Reciprocal links describe a particular configuration of a pair of websites (or web pages) in which a first website includes link to a second website, and the second website includes a link back to the first website.

45.    Multiple types of computer technologies used to create reciprocal links were known at the time the Patents-in-Suit were invented.  Examples of these technologies include ad-hoc creation,[15] webrings,[16] and the Horstmann technology.[17]

---

[12] *Id.*

[13] *See* https://en.wikipedia.org/wiki/Uniform_Resource_Identifier.

[14] *Id.*  A substantial overlap exists in the meanings of the claimed "functional identification element" of the '398 Patent and the claimed "functional marketing element" of the '971, '222, and '570 Patents and the known terms of hyperlink, link, and URL.  The '316 Patent uses the term "hyperlink."  For purposes of this First Amended Complaint, the term "link" is used throughout.

[15] Ad-hoc creation of reciprocal links is described in both the Background of the '316 Patent as well as U.S. Patent No. 6,629,135 assigned to DDR Holdings (Exhibit 8), which was cited during prosecution of the Patents-in-Suit.

[16] Webrings are described by Carol Casey in "Creating and Managing Webrings:  A Step-By-Step Guide" ("Casey"), published in Volume 18, Issue 4 of the Information and Technology Libraries in December of 1999 (Exhibit 9), which was cited during prosecution of the Patents-in-Suit.

[17] The Horstmann technology is described in U.S. Patent No. 5,995,099 ("Horstmann") (Exhibit 10), which was cited during prosecution of the Patents-in-Suit.

## II.    The Patents-in-Suit

46.    On September 12, 2023, U.S. Patent No. 11,763,316 (the "'316 Patent"), titled "Server system configured to provide graphical user interface for modifying web pages to include hyperlinks," was duly and legally issued by the USPTO.  A true and correct copy of the '316 Patent is attached as Exhibit 1.

47.    On April 12, 2016, U.S. Patent No. RE45,971 (the "'971 Patent"), titled "Developing electronic documents providing e-commerce tools," was duly and legally issued by the USPTO.  A true and correct copy of the '971 Patent is attached as Exhibit 2.

48.    On March 31, 2015, U.S. Patent No. 8,996,398 (the "'398 Patent"), titled "Reciprocal insertion of links for web pages," was duly and legally issued by the USPTO.  A true and correct copy of the '398 Patent is attached as Exhibit 3.

49.    On November 19, 2013, U.S. Patent No. 8,589,222 (the '222 Patent"), titled "User uploaded image within webpage implementation server system," was duly and legally issued by the USPTO.  A true and correct copy of the '222 Patent is attached as Exhibit 4.

50.    On April 2, 2013, U.S. Patent No. 8,412,570 ("the '570 Patent"), titled "Providing recommendations for reciprocal links in website creation system," was duly and legally issued by the USPTO.  A true and correct copy of the '570 Patent is attached as Exhibit 5.

51.    DiStefano solely owns, by assignment, all rights, titles, and interests in and to the '316 Patent, including the exclusive rights to bring suit with respect to any past, present, and/or future infringement by virtue of an assignment executed on March 24, 2024.[18]

---

[18] The assignment was recorded with the USPTO on March 25, 2024, on Reel 066889, Frame 0001.

52.     DiStefano solely owns, by assignment, all rights, titles, and interests in and to the '971 Patent, including the exclusive rights to bring suit with respect to any past, present, and/or future infringement by virtue of an assignment executed on March 24, 2024.[19]

53.     DiStefano solely owns, by assignment, all rights, titles, and interests in and to the '398 Patent, including the exclusive rights to bring suit with respect to any past, present, and/or future infringement by virtue of an assignment executed on March 24, 2024.[20]

54.     DiStefano solely owns, by assignment, all rights, titles, and interests in and to the '222 Patent, including the exclusive rights to bring suit with respect to any past, present, and/or future infringement by virtue of an assignment executed on March 24, 2024.[21]

55.     DiStefano solely owns, by assignment, all rights, titles, and interests in and to the '570 Patent, including the exclusive rights to bring suit with respect to any past, present, and/or future infringement by virtue of an assignment executed on March 24, 2024.[22]

III.    **The Patents-in-Suit Satisfy 35 U.S.C. § 101**

56.     A patent is presumed to be valid, and the burden of establishing invalidity by clear and convincing evidence shall rest on the party making the assertion.  35 U.S.C. § 282(a).

57.     Each of the Patents-in-Suit claims priority to U.S. Patent No. 7,996,259 (the "'259 Patent"), which was filed on June 7, 2000.

58.     The '971 Patent is a reissue of the '259 Patent.  The '971 Patent issued on August 9, 2011.

---

[19] The assignment was recorded with the USPTO on March 25, 2024, on Reel 066889, Frame 0001.

[20] The assignment was recorded with the USPTO on March 25, 2024, on Reel 066889, Frame 0001.

[21] The assignment was recorded with the USPTO on March 25, 2024, on Reel 066889, Frame 0001.

[22] The assignment was recorded with the USPTO on March 25, 2024, on Reel 066889, Frame 0001.

59.     The '971 Patent teaches the "creating and posting web pages to the internet" and "developing web pages through the use of a graphical user interface."  *See* '971 Patent, Field of the Invention.

60.     The USPTO determined in its Section 101 analysis that the claims of the '971 Patent provide inventive concepts, including "solv[ing] an Internet-centric problem of enabling users, with little or no programming knowledge, to interact with a GUI to create a website … that link to other websites over the internet."  Exhibit 11 at 23.

61.     The USPTO determined that display of the links "include[] special 'behind the scenes' programming of the GUI/system since it is the system that creates the websites with [links] to other websites…."  *Id.* at 23-24.

62.     The USPTO determined that "the system that performs the technical implementation of the invention," and "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *Id.* at 24.

63.     The USPTO determined that "claim 1 requires a particular machine since the system and GUI that cause the creation of websites … that link to other websites over the Internet are specially programmed to do so."  *Id.*

64.     The USPTO determined that "claim 1, as a whole, amounts to significantly more than the exception," to Section 101, and that this analysis also applies to independent Claims 4 and 8.  *Id.* at 24-25.

65.     The '316 Patent also claims priority to the '971 Patent and includes the same written description as the '971 Patent.  The '316 Patent teaches the "creating and posting web pages to the internet" and "developing web pages through the use of a graphical user interface."  *See* '316 Patent, Field of the Invention.

66.     During prosecution of the application that become the '316 Patent, DiStefano argued on appeal that "prior art systems that facilitated the creation of reciprocal links were also known," but DiStefano's approach to creating links "increas[ed] the efficiency of the process."  Exhibit 12 at 17.

67.     DiStefano argued on appeal that the claimed invention "eliminates the need for the reciprocal link enforcement [described by the prior art] by allowing a single operator/system to both create and serve the reciprocal links."  *Id.* at 19.

68.     DiStefano also argued on appeal that "the claimed invention addresses the problem of undesired reciprocal links."  *Id.* at 20.

69.     DiStefano pointed out that the Examiner <u>admitted</u> that "the claims are a technical solution."  *Id.* at 20.

70.     In addressing whether the claims preempt the Examiner's alleged abstract idea, DiStefano countered as follows:

> Claim 22 does not even remotely come close to broadly preempting the alleged abstract idea of *reciprocal links between web pages*. Reciprocal links between web pages already existed prior to the claimed invention. Moreover, Horstmann discloses a mechanism by which to create reciprocal links between web pages, and claim 22 does not broadly preempt that mechanism. Consequently, claim 22 does not broadly preempt the Examiner's alleged abstract idea.

Exhibit 12 at 29 (emphasis in original).

71.     In an Office Action dated August 25, 2020, during prosecution of the '316 Patent, the Examiner introduced a new rejection under 35 U.S.C. § 101 that incorporated the USPTO's 2019 Revised Patent Subject Matter Eligibility Guidance.  Exhibit 13 (November 25, 2020, Amendment during prosecution of the '316 Patent).

72.    Responsive to this rejection under 35 U.S.C. § 101, DiStefano filed an Amendment that included new claims and argued that these new claims meet the requirements of 35 U.S.C. § 101. *Id*.

73.    DiStefano argued that "[r]eciprocal hyperlinks existed prior to the earliest priority date of the claimed invention" and provided as examples of "Webrings, link exchanges, and the particular technology described by Horstmann."  Exhibit 14 at 15 (March 22, 2022, Supplemental Amendment during prosecution of the '316 Patent).

74.    DiStefano argued that "the Examiner's alleged judicial exception is not monopolized – neither in its entirety [n]or as part of a particular technological environment."  Exhibit 14 at 17 (emphasis in original).

75.    DiStefano argued that the "additional elements [recited in the claims] do more than generally link the alleged judicial exception to the particular technology environment."  Exhibit 14 at 18 (emphasis omitted).

76.    DiStefano argued that "the additional elements, individually and as a whole, impose a meaningful limit on the alleged judicial exception [, and] the alleged judicial exception is integrated into a practical application."  Exhibit 14 at 19.

77.    On May 20, 2022, DiStefano filed a Second Supplemental Amendment during prosecution of the '316 Patent that included a new set of claims that "maintain[ed] the arguments previously presented in the Amendment dated November 25, 2020, and the Supplemental Amendment dated March 21, 2022."  Exhibit 15 at 12 (May 20, 2022, Second Supplemental Amendment during prosecution of the '316 Patent).

78.    These claims were ultimately allowed by the Examiner in a Notice of Allowance dated June 7, 2023.

79.     The dependent claims of the '316 Patent describe and claim additional technological improvements.

80.     Dependent Claim 4 recites that the graphical user interface is configured to present a graphical widget adjacent to each of the one or more identifiers respectively associated with the one or more previously-created websites that are configured to receive a user-initiated selection, which improves the usability of the graphical user interface in allowing a user to select a previously-created website to which to link.

81.     Claim 6 recites user information is collected by the graphical user interface, and the previously-created websites being presented to the user are selected by the server system based upon the user information.

82.     Claim 8 recites that the server system uses a searching engine to select the plurality of previously-created websites using other user information previously-supplied by other users of the server system.

83.     The '398 Patent claims priority to the '971 Patent and includes the same written description as the '971 Patent.

84.     The '398 Patent teaches the "creating and posting web pages to the internet" and "developing web pages through the use of a graphical user interface."  *See* '398 Patent, Field of the Invention.

85.     Dependent Claim 2 recites that the second functional identification element includes an image.

86.     Dependent Claim 3 recites that the image is received from the user.

87.     The '222 Patent claims priority to the '971 Patent and includes the same written description as the '971 Patent.

88.    The '222 Patent teaches the "creating and posting web pages to the internet" and "developing web pages through the use of a graphical user interface." *See* '222 Patent, Field of the Invention.

89.    Dependent Claim 4 recites that a user can search for web assets and dependent Claim 5 recites that a web asset can be selected by the user for insertion into a web page.

90.    Claim 6 recites that web assets authored by third party can be selected for insertion into the website.

91.    The '570 Patent claims priority to the '971 Patent and includes the same written description as the '971 Patent.

92.    The'570 Patent teaches the "creating and posting web pages to the internet" and "developing web pages through the use of a graphical user interface." *See* '570 Patent, Field of the Invention.

93.    Dependent Claim 2 recites that the second functional marketing element includes an image, and dependent Claim 3 recites that the image is received from the user.

94.    Dependent Claim 5 recites that a user can search for web assets and dependent Claim 6 recites that web assets authored by third party can be inserted into the website.

95.    Claim 10 recites that the first website and second website are generated based upon inputs, respectively, from first and second users.

### IV.    ByteDance

96.    Defendant ByteDance Ltd. is one of the largest companies in the world with a market cap estimated to be "worth in excess of $200 billion" as of July 2023.[23]

97.    Defendant ByteDance Pte. Ltd., Defendant TikTok Ltd., and Defendant Heliophilia Pte. Ltd., are wholly owned subsidiaries of Defendant ByteDance Ltd. and respectively publish the Accused Products: the CapCut App., the TikTok App., and the Lemon8 App.

98.    TikTok App is an application that allows users to create and share short-form mobile videos.[24]

99.    The TikTok App launched in the United States in 2018 after ByteDance merged its Chinese-language app, Douyin, with Musical.ly,[25] which was purchased by ByteDance in 2017.[26]

100.    Despite being banned on Federal government-issued devices[27] and in Texas[28] over security concerns, "[m]ore than 150 million people in the United States use TikTok [App] on a

---

[23] *See* https://www.reuters.com/technology/tiktok-parent-bytedance-allow-us-staff-cash-out-shares-sources-2023-07-11/ (last accessed October 29, 2024).

[24] *See* https://www.tiktok.com/about?lang=en (last accessed October 29, 2024).

[25] *See* https://digiday.com/media/everything-you-need-to-know-about-bytedance-the-company-behind-tiktok/ (last accessed October 29, 2024).

[26] *See* https://beebom.com/musical-ly-app-to-be-shut-down-users-will-be-migrated-to-tiktok/ (last accessed October 29, 2024).

[27] *See* https://fedscoop.com/tiktok-ban-on-federal-devices-formalized/ (last accessed October 29, 2024).

[28] *See* https://gov.texas.gov/news/post/governor-abbott-announces-statewide-plan-banning-use-of-tiktok (last accessed October 29, 2024).

monthly basis" as of March of 2023,[29] and TikTok has an estimated 1.5 billion active users.[30] "TikTok generated an estimated $9.4 billion revenue in 2022."[31]

101.    CapCut, formerly known as Jianying in China,[32] is a video-editing app that is intended to support the TikTok App.  CapCut was released worldwide on April 10, 2020, and is owned by ByteDance Pte. Ltd.[33]  "ByteDance's popular video editing app *CapCut* has surpassed $100 Million in consumer spend across iOS and Google Play, as of September 11, 2023" and "[a]s of August 2023, *CapCut* is used globally by 490 million people across iPhones and Android phones."[34]

102.    Lemon8 is a video and photo-sharing app that is owned by Heliophilia Pte. Ltd.[35] Lemon8 was first introduced in Japan in April of 2020,[36] and was subsequently launched in the United States in February of 2023.[37]

---

[29] Written testimony of Shou Chew, Chief Executive Officer of Defendant TikTok Ltd., before the U.S. House Committee on Energy and Commerce on March 23, 2023.  Available at https://d1dth6e84htgma.cloudfront.net/Written_Testimony_of_Shou_Chew_c07504eccf_084e8683 f3.pdf (last visited October 29, 2024).

[30] *See* https://www.businessofapps.com/data/tik-tok-statistics/ (last visited October 29, 2024).

[31] *Id.*

[32] "The name of the app was changed to CapCut on 11th December 2020."  *See* https://hashtaghyena.com/tiktok/does-tiktok-own-capcut-the-best-video-editing-app-ever/ (last accessed October 29, 2024).

[33] *See* https://app.sensortower.com/overview/com.lemon.lvoverseas?country=US (last accessed October 29, 2024).

[34] *See* https://www.businessofapps.com/news/capcut-video-app-sees-100-million-milestone-in-consumer-spend/ (last accessed October 29, 2024).

[35] *See* https://mashable.com/article/lemon8-app-explainer (last accessed October 29, 2024).

[36] *See* https://www.nytimes.com/2023/03/29/technology/tiktok-lemon8-content-creators.html (last accessed October 29, 2024).

[37] *See* https://www.washingtonpost.com/technology/2023/04/01/lemon8-bytedance-social-media/ (last accessed October 29, 2024).

## V.    ByteDance's Infringement of the Patents-in-Suit

103.    As described below, ByteDance infringes (literally or under the doctrine of equivalents) the asserted claims of the Patents-in-Suit by making, using, selling, offering for sale, and/or importing into the United States.

104.    On information and belief, ByteDance has had actual and/or constructive notice of at least some of the Patents-in-Suit prior to the filing of this lawsuit.

### COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 11,763,316

105.    DiStefano restates, realleges, reasserts and incorporates by reference each and every allegation set forth in Paragraphs 1–104 of this First Amended Complaint.

106.    DiStefano has not licensed or otherwise authorized Defendants to make, use, sell, offer for sale, and/or import any products and/or services that embody the invention(s) of the '316 Patent.

107.    Defendants have infringed and continue to directly infringe, alone or jointly, one or more asserted claims of the '316 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States without the authority of the patent owner in violation of 35 U.S.C. § 271(a).

108.    Defendants' infringing products include, but are not limited to, the Accused Products and any same or reasonably similar products.

109.    For example, as described below, Defendants infringe asserted Claim 1 of the '316 Patent.   Claim 1 of the '316 Patent recites:

> *1. A method performed within and by a server system configured to modify and serve web pages, comprising:*
>
> > *receiving, from a first client device associated with a first user and via a*

*graphical user interface associated with the server system, information indicating a selection of a web asset to be used in a first web site;*

*receiving, from the first client device and via an editing screen of the graphical user interface, an instruction to modify the web asset to generate an edited web asset;*

*generating, based upon the instruction, the edited web asset;*

*forwarding, to the first client device and to be displayed by the graphical user interface, one or more identifiers respectively associated with one or more previously-created websites that were previously-created by one or more other users of the server system;*

*receiving, from the first client device and via the graphical user interface, a first identification indicating a selection of a second website from the one or more previously-created websites to create a first hyperlink from the first web site to the second web site;*

*storing, within a computer database system of the server system, first information indicating that the first identification was received by the server system;*

*modifying, based upon the instruction, the first website to include the edited web asset;*

*modifying, based upon the first information indicating that the first identification was received, the first web site to include the first hyperlink;*

*modifying, based upon the first information indicating that the first identification was received, the second web site to include a reciprocal second hyperlink to the first web site; and*

*serving computer data associated with the first website that includes the edited web asset and the first hyperlink from the first web site to the second web site, wherein*

*the server system is configured to host the first web site and the second website, the editing screen is configured to display the web asset, and the graphical user interface includes a primary display screen configured to display the edited*

21

*web asset based upon the instruction.*

110.    Defendants' servers receive from a first client device associated with a first user and via a graphical user interface associated with the server system, information indicating a selection of a web asset to be used in a first website for each of the TikTok, CapCut, and Lemon8 applications.





graphical user interface associated
with CapCut in first client device

Process of adding photo is
selection of web asset and
information indicating this
selection is sent to CapCut's
server system



graphical user interface associated
with Lemon8 in first client device

Process of adding photo is
selection of web asset and
information indicating this
selection is sent to Lemon8's
server system

23

111.    Defendants' servers receive from the first client device and via an editing screen of the graphical user interface, an instruction to modify the web asset to generate an edited web asset and generate, based upon the instruction, the edited web asset for each of the TikTok, CapCut, and Lemon8 applications.



editing screen used to provide instructions for server system to modify web asset

edited web asset which is a modified version of selected web asset



editing screen used to provide instructions for server system to modify web asset

edited web asset which is a modified version of selected web asset



112.    Defendants' servers forward one or more identifiers, each associated with one or more websites that were previously-created by one or more users of the server system to the first client device and to be displayed by the graphical user interface, for each of the TikTok, CapCut, and Lemon8 applications.



identifiers respectively
associated with one or more
previously-created user
websites (e.g., user profiles)

graphical user interface



identifiers respectively
associated with one or more
previously-created user
websites (e.g., user profiles)

graphical user interface



27

113.    Defendants' servers receive from the first client device and via the graphical user interface, a first identification indicating a selection of a second website from the one or more previously-created websites to create a first hyperlink from the first website to the second website for each of the TikTok, CapCut, and Lemon8 applications.





graphical user interface

selecting icon acts as the first identification



graphical user interface

selecting "Follow" acts as the first identification

114.    Defendants' servers store within a computer database system of the server system, first information indicating that the first identification was received by the server system, for each of the TikTok, CapCut, and Lemon8 applications.



First user (Ilikeblackbears) following second user (@bears) is stored within a computer database system of TikTok's server system. This data being stored is evidenced by the "Following" being updated from 0 to 1 in first user's profile, and the "Followers" being updated from 25 to 26 in second user's profile.

Clicking on the "Following" button in first user's profile leads to a list that includes a link to the second user's profile, and clicking on the "Followers" tab in the second user's profile leads to a list that includes a link to the first user's profile, which indicates that this data has been stored.



First user (Black Bear) following second user (Schaetzle_33) is stored within a computer database system of CapCut's server system. This data being stored is evidenced by the "Following" being updated from 0 to 1 in first user's profile, and the "Followers" being updated from 53 to 54 in second user's profile.

Clicking on the "Following" button in first user's profile leads to a list that includes a link to the second user's profile, and clicking on the "Followers" tab in the second user's profile leads to a list that includes a link to the first user's profile, which indicates that this data has been stored.





First user (lemon8224959541) following second user (Erica Huzler) is stored within a computer database system of Lemon8's server system. This data being stored is evidenced by the "Following" being updated from 0 to 1 in first user's profile, and the "Followers" being updated from 0 to 1 in second user's profile.

Clicking on the "Following" button in first user's profile leads to a list that includes a link to the second user's profile, and clicking on the "Followers" tab in the second user's profile leads to a list that includes a link to the first user's profile, which indicates that this data has been stored.

31

115.    Defendants' servers modify the first website to include the edited web asset based upon the instruction for each of the TikTok, CapCut, and Lemon8 applications.



edited web asset(s)



web page of
first website

edited web asset(s)



web page of
first website

116.    Defendants' servers are configured to host the first website and the second website and: (i) modify, based upon the first information indicating that the first identification was received, the first website to include the first hyperlink, (ii) modify, based upon the first information indicating that the first identification was received, the second website to include a reciprocal second hyperlink to the first website, and (iii) serve computer data associated with the first website that includes the edited web asset and the first hyperlink from the first website to the second website. This is true for each of the TikTok, CapCut, and Lemon8 applications.





first website includes edited web asset

second hyperlink from second website to first website

web page of first website

web page of first website includes first hyperlink

first hyperlink from first website to second website

web page of second website

web page of second website includes second hyperlink



117.    For the TikTok, CapCut, and Lemon8 applications, the editing screen is configured to display the web asset, and the graphical user interface includes a primary display screen configured to display the edited web asset based upon the instruction.



editing screen(s) displays web asset (picture/text)

edited web asset

graphical user interface includes primary screen that displays edited web asset



editing screen(s) displays web asset (picture/text)

edited web asset

graphical user interface includes primary screen that displays edited web asset



118.    Defendants infringe Claim 3 of the '316 Patent as outlined below.  Claim 3 of the '316 Patent recites:

> 3.  The method of claim 1, wherein
> the graphical user interface is configured to receive an entry associated with the first identification within an entry field of the graphical user interface.

119.    For the TikTok, CapCut, and Lemon8 applications, the graphical user interface is configured to receive an entry associated with the first identification within an entry field of the graphical user interface.

entry

entry field of graphical user interface

entry is associated with
first identification
(indicating selection of
user/profile)



entry

entry field of graphical user interface

entry is associated with
first identification
(indicating selection of
user/profile)



entry

entry field of graphical user interface

entry is associated with
first identification
(indicating selection of
user/profile)



40

120.    Defendants infringe Claim 4 of the '316 Patent.  Claim 4 of the '316 Patent recites:

*4.  The method of claim 1, wherein*

*the graphical user interface is configured to present a graphical widget adjacent each of the one or more identifiers respectively associated with the one or more previously-created websites, the graphical widget is configured to receive a user-initiated selection, and the selection of the second website is based upon the user-initiated selection.*

121.    For the TikTok, CapCut, and Lemon8 applications, the graphical user interface is configured to present a graphical widget adjacent each of the one or more identifiers respectively associated with the one or more previously-created websites, the graphical widget is configured to receive a user-initiated selection, and the selection of the second website is based upon the user-initiated selection.



41

identifier associated with previously
created website (profile)

identifier associated with previously
created website (profile)

selectable graphical widget adjacent identifier

selectable graphical widget adjacent identifier



identifier associated with previously
created website (profile)

identifier associated with previously
created website (profile)

selectable graphical widget adjacent identifier

selectable graphical widget adjacent identifier



122.    Defendants infringe Claim 5 of the '316 Patent.  Claim 5 of the '316 Patent recites:

*5.  The method of claim 1, wherein*

*the server system is configured to identify the one or more previously-created websites based upon a receipt, by the server system, of a request generated by the graphical user interface for one or more suggested linking locations for the first website.*

123.    For the TikTok, CapCut, and Lemon8 applications, the server system is configured to identify the one or more previously-created websites based upon a receipt, by the server system, of a request generated by the graphical user interface for one or more suggested linking locations for the first website.





124.  Defendants infringe Claim 6 of the '316 Patent.  Claim 6 of the '316 Patent recites:

*6.  The method of claim 1, wherein*

*the graphical user interface is configured to receive user information supplied by the first user within at least one information collection field of the graphical user interface, and the server system is configured to select the one or more the previously-created websites associated with the one or more identifiers to be displayed to the first user based upon the user information supplied by the first*

*user within the at least one information collection field of the graphical user interface.*

125.    The TikTok, CapCut, and Lemon8 applications each include a graphical user interface configured to receive user information supplied by the first user within at least one information collection field of the graphical user interface, and the server system is configured to select the one or more the previously-created websites associated with the one or more identifiers to be displayed to the first user based upon the user information supplied by the first user within the at least one information collection field of the graphical user interface.



CapCut's server system suggests user/profile(s) based upon user information provided in information collection fields

CapCut's server system suggests user/profile(s) based upon information provided in search field





Entering "Cats" is information is used by Lemon8's server system to select previously-created websites to be displayed to the first user

clicking on "travel" is receipt of user information within information collection field

user/profile(s) associated with "travel" are suggested by Lemon8's server system

users/profiles associated with "Cats" are displayed





126.    Defendants infringe Claim 7 of the '316 Patent.  Claim 7 of the '316 Patent recites:

> 7.  *The method of claim 6, wherein*
>
> *the user information supplied by the first user within the at least one information collection field of the graphical user interface and used to select one or more the previously-created websites associated with the one or more identifiers includes at least one of a group consisting of:*
>
> *a name of the first user, an email address of the first user, a hobby of the*

46

*first user, a business of the first user, and an interest of the first user.*

127.    For each of the TikTok, CapCut, and Lemon8 applications, the user information supplied by the first user within the at least one information collection field of the graphical user interface and used to select one or more the previously-created websites associated with the one or more identifiers includes at least one of a group consisting of a name of the first user, an email address of the first user, a hobby of the first user, a business of the first user, and an interest of the first user.





"Jessica" is user information that is an "interest of the first user"



"Cats" is user information that is an "interest of the first user"



"travel" is user information that is an "interest of the first user"

128.    Defendants infringe Claim 8 of the '316 Patent.  Claim 8 of the '316 Patent recites:

*8.  The method of claim 6, wherein*

*the server system is configured to select the plurality of the previously-created websites associated with the one or more identifiers by searching other user information previously-supplied by other users of the server system and stored*

*within the server system, and the searching is performed by a search engine using the user information supplied by the first user within the at least one information collection field of the graphical user interface.*

129.    Defendants' server system is configured to select the plurality of the previously-created websites associated with the one or more identifiers by searching other user information previously-supplied by other users of the server system and stored within the server system, and the searching is performed by a search engine using the user information supplied by the first user within the at least one information collection field of the graphical user interface.  This is true for the TikTok, CapCut, and Lemon8 applications.



name includes "Jessica" which was supplied by other user





identifier/widget for selection of user profiles associated with "Jessica"

name includes "Jessica" which was supplied by other user

name includes "Jessica" which was supplied by other user



130.    Defendants further infringe Claim 9 of the '316 Patent.  Claim 9 of the '316 Patent recites:

> *9.  The method of claim 6, wherein*
>
> *the first user and the second user are registered users of the server system.*

131.    For each of the TikTok, CapCut, and Lemon8 applications, the first user and the second user are registered users of the server system.



users register to create account



users register to create account



132.    Defendants infringe Claim 11 of the '316 Patent.  Claim 11 of the '316 Patent recites:

*11.  The method of claim 1, wherein*
*the first web site of the first user includes a plurality of web pages including*
*a first web page.*

133.    The first website of the first user includes a plurality of web pages including a first web page for each of the TikTok, CapCut, and Lemon8 applications.

one web page of website          another web page of website
(associated with user)            (associated with user)

 

one web page of website
(associated with user)

another web page of website
(associated with user)





one web page of website          another web page of website
(associated with user)           (associated with user)

 

134.    Defendants infringe Claim 13 of the '316 Patent.  Claim 13 of the '316 Patent recites:

*13.  The method of claim 11, wherein*

*the server system is configured to:*

*create, in the first web page, a reciprocal link site for the first hyperlink, and*

*create, in a second web page of the second website, a reciprocal link site for the second hyperlink.*

135.    Defendants' server systems are configured to:  create, in the first web page, a reciprocal link site for the first hyperlink, and create, in a second web page of the second website, a reciprocal link site for the second hyperlink for each of the TikTok, CapCut, and Lemon8 applications.

55



reciprocal link site for first hyperlink

reciprocal link site for second hyperlink

reciprocal link site for first hyperlink

reciprocal link site for second hyperlink

reciprocal link site for first hyperlink

reciprocal link site for second hyperlink

136.    All the above constitute acts of past and continuing infringement by Defendants of asserted Claims 1, 3-9, 11, and 13 of the '316 Patent.

137.    In November 2022, DiStefano provided notice to ByteDance in China that the application that became the '316 patent had been allowed.  After the patent issued, DeStefano informed ByteDance that the '316 Patent had issued.

138.    Since September 19, 2023, Defendants have continued these infringing activities despite their knowledge of, or willful blindness to, the asserted claims of the '316 Patent.

139.    Accordingly, Defendants' infringement has been, and continues to be, willful and deliberate.

140.    Defendants' infringement of the '316 Patent amounts to egregious and exceptional misconduct and, therefore DiStefano is therefore entitled to recover treble damages under 35 U.S.C. § 284 and reasonable attorneys' fees incurred in litigating this action under 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. RE45,971

141.    DiStefano restates, reasserts, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1–140 of this First Amended Complaint.

142.    DiStefano has not licensed or otherwise authorized Defendants to make, use, sell, offer for sale, and/or import any products and/or services that embody the invention(s) of the '971 Patent.

143.    Defendants have infringed and continue to directly infringe, alone or jointly, one or more asserted claims of the '971 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States without the authority of the patent owner in violation of 35 U.S.C. § 271(a).

144.    The Accused Products satisfy each and every element of the asserted claims of the '971 Patent.  Defendants' infringing products include but are not limited to the Accused Products and any same or reasonably similar products.

145.    For example, Defendants infringe asserted Claim 4 of the '971 Patent.  Claim 4 of the '971 Patent recites:

> 4.  *A method, within a computer hardware website implementation system, of establishing a reciprocal arrangement between a first website and a preexisting second website, comprising:*
>
> *registering the second website with the website implementation system;*
>
> *receiving, by the website implementation system, a request by a first user to implement the first website;*
>
> *receiving, by the website implementation system, a selection by the first user as to a second functional marketing element to be activated on the second website;*
>
> *establishing, by the website implementation system, a reciprocal site in the first website for a first functional marketing element; and*
>
> *upon the first website being activated with respect to the internet, the computer website implementation system implementing the reciprocal arrangement by causing (i) the first website to implement the first functional marketing element, and (ii) the second website to implement the second functional marketing element, wherein*
>
> *the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second website, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first website.*

146.    A reciprocal arrangement is established between a first website and a preexisting second website for each of the TikTok, CapCut, and Lemon8 applications.



second functional marketing element (hyperlink) from second website

first website

first functional marketing element (hyperlink) from first website

second website

second functional marketing element (hyperlink) from second website

first website

first functional marketing element (hyperlink) from first website

second website

59



147.    Defendants' server systems register the second website for each of the TikTok, CapCut, and Lemon8 applications.







148.    Defendants' server systems receive a request by a first user to implement the first website for each of the TikTok, CapCut, and Lemon8 applications.

  

149.     Defendants' server systems receive a selection by the first user as to a second functional marketing element to be activated on the second website for each of the TikTok, CapCut, and Lemon8 applications.





150.    Defendants' server systems establish a reciprocal site in the first website for a first functional marketing element for each of the TikTok, CapCut, and Lemon8 applications.



reciprocal link site in first website for hyperlink (functional marketing element)



reciprocal link site in first website for hyperlink (functional marketing element)



reciprocal link site in first website for hyperlink (functional marketing element)

151.    Defendants' server systems implement, upon the first website being activated with respect to the internet, the reciprocal arrangement by causing (i) the first website to implement the

first functional marketing element, and (ii) the second website to implement the second functional

marketing element for each of the TikTok, CapCut, and Lemon8 applications.



152.    For each of the TikTok, CapCut, and Lemon8 applications, the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second website, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first website.





153.    Defendants infringe asserted Claim 8 of the '971 Patent.    Claim 8 of the '971 Patent recites:

> 8.  A method, within a computer hardware web page implementation system, of establishing a reciprocal arrangement between a first web page, associated with a first user, and a second web page, comprising:
>
> generating, by the web page implementation system, a second functional marketing element, associated with the first user, to be activated on the second web page;
>
> establishing, by the web page implementation system, a reciprocal site in the first web page for a first functional marketing element; and
>
> implementing, by the web page implementation system and upon the first web page being activated with respect to the internet, the reciprocal arrangement by causing (i) the first web page to implement the first functional marketing element, and (ii) the second web page to implement the second functional marketing element, wherein
>
> the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second web page, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first web page.

154.    A reciprocal arrangement is established between a first web page, associated with a first user, and a second web page for each of the TikTok, CapCut, and Lemon8 applications.



second functional marketing element (hyperlink) from second web page

first web page

first functional marketing element (hyperlink) from first web page

second web page

second functional marketing element (hyperlink) from second web page

first web page

first functional marketing element (hyperlink) from first web page

second web page



155.    Defendants' server systems generate a second functional marketing element, associated with the first user, to be activated on the second web page for each of the TikTok, CapCut, and Lemon8 applications.





156.    Defendants' server systems establish a reciprocal site in the first web page for a first functional marketing element for each of the TikTok, CapCut, and Lemon8 applications.



reciprocal link site in first web page for hyperlink (functional marketing element)

reciprocal link site in first web page for hyperlink (functional marketing element)



reciprocal link site in first web page for hyperlink (functional marketing element)



72

157.    Defendants' server systems implement, upon the first web page being activated with respect to the internet, the reciprocal arrangement by causing (i) the first web page to implement the first functional marketing element, and (ii) the second web page to implement the second functional marketing element for each of the TikTok, CapCut, and Lemon8 applications.





158. For each of the TikTok, CapCut, and Lemon8 applications, the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second web page, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first web page.





second functional marketing element (hyperlink) from second web page

first web page

first functional marketing element (hyperlink) from first web page

second web page

second functional marketing element (hyperlink) from second web page

first web page

first functional marketing element (hyperlink) from first web page

second web page

159.    Defendants infringe asserted Claim 9 of the '971 Patent.  Claim 9 of the '971 Patent recites:

> 9.  *The method of claim 8, further comprising including, within the first web page, a web asset provided by a third party separate from the computer hardware system.*

160.    Defendants' servers include, within the first web page, a web asset provided by a third party separate from the computer hardware system. This is true for each of the TikTok, CapCut, and Lemon8 applications.







161.    Defendants infringe Claim 12 of the '971 Patent.  Claim 12 of the '971 Patent recites:

*12.  The method of claim 8, wherein*

*the second functional marketing element includes an image.*

162.    For each of the TikTok, CapCut, and Lemon8 applications, the second functional marketing element includes an image.







163.    Defendants infringe Claim 13 of the '971 Patent.  Claim 13 of the '971 Patent recites:

*13.  The method of claim 12, further comprising receiving, from the first user, the image.*

164.    For each of the TikTok, CapCut, and Lemon8 applications, Defendants' servers receive, from the first user, the image.

user interface configured to permit user to add image

image is received by TikTok's server from user interface and used to create link (functional marketing element)

second functional marketing element (e.g., hyperlink to first web page) includes image






user interface configured to permit user to add image

image is received by CapCut's server from user interface and used to create link (functional marketing element)

second functional marketing element (e.g., hyperlink to first web page) includes image








165.    All the above constitute acts of past and continuing infringement by Defendants of asserted Claims 4, 8-9, and 12-13 of the '971 Patent.

166.    In November 2022, DiStefano provided notice to ByteDance in China that the of the '971 Patent.

167.    Since at least November 2022, Defendants have continued these infringing activities despite their knowledge of, or willful blindness to, the asserted claims of the '971 Patent.

168.    Accordingly, Defendants' infringement has been, and continues to be, willful and deliberate.

169.    Defendants' infringement of the '971 Patent amounts to egregious and exceptional misconduct, and DiStefano is therefore entitled to recover treble damages under 35 U.S.C. § 284 and reasonable attorneys' fees incurred in litigating this action under 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,996,398

170.    DiStefano restates, realleges, reasserts and incorporates by reference each and every allegation set forth in Paragraphs 1–169 of this First Amended Complaint.

171.    DiStefano has not licensed or otherwise authorized Defendants to make, use, sell, offer for sale, and/or import any products and/or services that embody the invention(s) of the '398 Patent.

172.    Defendants have infringed and continue to directly infringe, alone or jointly, one or more asserted claims of the '398 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States without the authority of the patent owner in violation of 35 U.S.C. § 271(a).

173.    The Accused Products satisfy each and every element of the asserted claims of the '398 Patent.  Defendants' infringing products include, but are not limited to the Accused Products and any same or reasonably similar products.

174.    Defendants infringe asserted Claim 1 of the '398 Patent.   Claim 1 of the '398 Patent recites:

> 1.  A method, within a computer hardware system, comprising:
> inserting, within a first web page associated with a first entity, a first functional identification element associated with a second entity; and
> reciprocally inserting, within a second web page associated with the second entity, a second functional identification element associated with the first entity based upon the first functional identification element being inserted within the first web page, wherein
> the second functional identification element, within the second web page, includes a link to the second web page, and the first functional identification element, within the first web page, includes a link to the second web page.

175.    Defendants' server systems insert, within a first web page associated with a first entity, a first functional identification element associated with a second entity, and reciprocally insert, within a second web page associated with the second entity, a second functional identification

element associated with the first entity based upon the first functional identification element being

inserted within the first web page.  This holds true for both the TikTok and CapCut applications.





176.    For each of the TikTok and CapCut applications, the second functional identification element, within the second web page, includes a link to the second web page, and the first functional identification element, within the first web page, includes a link to the second web page.



177.    Defendants infringe Claim 2 of the '398 Patent.  Claim 2 of the '398 Patent recites:

*2.  The method of claim 1, wherein*

*the second functional identification element includes an image.*

178.    The second functional identification element includes an image. This holds true for both the TikTok and CapCut applications.



179.    Defendants infringe Claim 3 of the '398 Patent.  Claim 3 of the '398 Patent recites:

*3. The method of claim 2, further comprising:*

*receiving, from the first entity, the image.*

180.    Defendants' server systems receive, from the first entity, the image.  This holds true for both the TikTok and CapCut applications.



181.    Defendants infringe Claim 4 of the '398 Patent.  Claim 4 of the '398 Patent recites:

*4. The method of claim 1, wherein*

*the computer hardware system is a server system.*

182.    The computer hardware system is a server system for both the TikTok and CapCut applications.





183.    Defendants infringe Claim 5 of the '398 Patent.  Claim 5 of the '398 Patent recites:

*5. The method of claim 4, wherein*

*the server system is a webpage implementation server system.*

184.     The server system is a webpage implementation server system for both the TikTok and CapCut applications.





185.    Defendants infringe Claim 6 of the '398 Patent.  Claim 6 of the '398 Patent recites:

*6.  The method of claim 1, wherein*
*the first web page includes one or more web pages.*

186.    The first web page includes one or more web pages for both the TikTok and CapCut applications.





187.    Defendants infringe Claim 8 of the '398 Patent.  Claim 8 of the '398 Patent recites:

*8.  The method of claim 1, wherein*

*the computer hardware system is a webpage implementation server system, the first entity is a first registered user of the webpage implementation server system, and the second entity is a second registered user of the webpage implementation server system.*

188.    Defendants' computer hardware systems are webpage implementation server systems, the first entity is a first registered user of the webpage implementation server system, and the second entity is a second registered user of the webpage implementation server system. This holds true for each of the TikTok and CapCut applications.



189.    All the above constitute acts of past and continuing infringement by Defendants of asserted Claims 1-6 and 8 of the '398 Patent.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,589,222

190.    DiStefano restates, realleges, reasserts and incorporates by reference each and every allegation set forth in Paragraphs 1–189 of this First Amended Complaint.

191.    DiStefano has not licensed or otherwise authorized Defendants to make, use, sell, offer for sale, and/or import any products and/or services that embody the invention(s) of the '222 Patent.

192.    Defendants have infringed and continue to directly infringe, alone or jointly, one or more asserted claims of the '222 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States without the authority of the patent owner in violation of 35 U.S.C. § 271(a).  The Accused Products satisfy each and every element of the asserted claims of the '222 Patent.   Defendants' infringing products include, but are not limited to, the Accused Products and any same or reasonably similar products.

193.    Defendants infringe asserted Claim 1 of the '222 Patent.   Claim 1 of the '222 Patent recites:

> *1.  A method, within a webpage implementation server system, comprising:*
> *receiving, from a first entity, an image;*
> *generating, based upon input provided by the first entity, a first web page associated with the first entity;*
> *generating, based upon input provided by a second entity, a second web page associated with the second entity;*

> *inserting, within the first web page, a first functional marketing element associated with the second entity; and*
>
> *reciprocally inserting, within the second web page, a second functional marketing element associated with the first entity based upon the first functional marketing element being inserted within the first web page, wherein*
>
> *the second functional marketing element, within the second web page, includes the image and a link to the first web page, and the first functional marketing element, within the first web page, includes a link to the second web page.*

194.    Defendants' server systems receive an image from a first entity for both the TikTok and CapCut applications.





195.    Defendants' server systems generate, based upon input provided by the first entity, a first web page associated with the first entity, and generate, based upon input provided by a second entity, a second web page associated with the second entity for both the TikTok and CapCut applications.





196.    Defendants' server systems insert, within the first web page, a first functional marketing element associated with the second entity, and reciprocally insert, within the second web page, a second functional marketing element associated with the first entity based upon the first functional marketing element being inserted within the first web page for both the TikTok and CapCut applications.





197.    The second functional marketing element, within the second web page, includes the image and a link to the first web page, and the first functional marketing element, within the first web page, includes a link to the second web page for both the TikTok and CapCut applications.





198.    Defendants infringe Claim 2 of the '222 Patent.  Claim 2 of the '222 Patent recites:

2.  *The method of claim 1, wherein*
*the first web page includes one or more web pages.*

199.    The first web page includes one or more web pages for both the TikTok and CapCut applications.



97

200.    Defendants infringe Claim 3 of the '222 Patent.  Claim 3 of the '222 Patent recites:

*3.  The method of claim 1, further comprising:*

*providing, to the first entity, at least one recommended web page, associated with the webpage implementation server system, into which the second functional marketing element is to be reciprocally inserted.*

201.    Defendants' server system provides, to the first entity, at least one recommended web page, associated with the server system, into which the second functional marketing element is to be reciprocally inserted for both the TikTok and CapCut applications.



202.    Defendants infringe Claim 4 of the '222 Patent.  Claim 4 of the '222 Patent recites:

*4.  The method of claim 1, further comprising:*

*receiving, from the first entity, a search request for web assets.*

203.    Defendants' server system receives, from the first entity, a search request for web assets for both the TikTok and CapCut applications.



204.    Defendants infringe Claim 5 of the '222 Patent.  Claim 5 of the '222 Patent recites:

*5. The method of claim 4, further comprising:*

*inserting, into the first web page, a web asset selected by the first entity.*

205.    Defendants' server systems insert, in the first web page, a web asset selected by the first entity for both the TikTok and CapCut applications.



206.    Defendants infringe Claim 6 of the '222 Patent.  Claim 6 of the '222 Patent recites:

*6. The method of claim 5, wherein*

*the selected web assets is authored by a third party separate from the webpage*

*implementation server system.*

207.    The selected web assets are authored by a third party separate from the webpage implementation server system for both the TikTok and CapCut applications.



208.    All the above constitute acts of past and continuing infringement by Defendants of asserted Claims 1-6 of the '222 Patent.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,412,570

209.    DiStefano restates, realleges, reasserts and incorporates by reference each and every allegation set forth in Paragraphs 1–208 of this First Amended Complaint.

210.    DiStefano has not licensed or otherwise authorized Defendants to make, use, sell, offer for sale, and/or import any products and/or services that embody the invention(s) of the '570 Patent.

211.    Defendants have infringed and continue to directly infringe, alone or jointly, the asserted claims of the '570 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States without the authority of the patent owner in violation of 35 U.S.C. § 271(a).

212.    The Accused Products satisfy each and every element of the asserted claims of the '570 Patent.   Defendants' infringing products include, but are not limited to, the Accused Products and any same or reasonably similar products.

213.    Defendants infringe asserted Claim 1 of the '570 Patent.   Claim 1 of the '570 Patent recites:

> *1.  A method, within a computer hardware system, comprising:*
> *receiving, from a first user, a registration for a first website;*
> *receiving, from a second user, a registration for a second website;*
> *associating a second functional marketing element with the first user;*
> *associating a first functional marketing element with the second user;*
> *inserting, within the first website, the first functional marketing element;*
> *providing, to the first user, at least one recommended website, associated with the computer hardware system, into which the second functional marketing element is to be reciprocally inserted; and*
> *reciprocally inserting, within the second website, the second functional*

*marketing element based upon the first functional marketing element being inserted within the first website, wherein*

*the at least one recommended website is different than the first website, the second functional marketing element, within the second website, includes a link to the first website, and the first functional marketing element, within the first website, includes a link to the second website.*

214.    Defendants' servers receive a registration for a first website from a first user and a registration for a second website from a second user for both the TikTok and CapCut applications.



215.    Defendants' servers associate a second functional marketing element (e.g., hyperlink) with the first user and associate a first functional marketing element with the second user. a registration for a first website from a first user and a registration for a second website from a second user. This is true for both the TikTok and CapCut applications.



216.    Defendants' servers insert, within the first website, the first functional marketing element and reciprocally insert, within the second website, the second functional marketing element based upon the first functional marketing element being inserted within the first website. This is true for both the TikTok and CapCut applications.



217.  Defendants' servers provide, to the first user, at least one recommended website, associated with the computer hardware system, into which the second functional marketing element is

to be reciprocally inserted and the at least one recommended website is different than the first website. This holds true for both the TikTok and CapCut applications.



218.    The second functional marketing element, within the second website, includes a link to the first website, and the first functional marketing element, within the first website, includes a link to the second website. This holds true for both the TikTok and CapCut applications.



219.    Defendants infringe Claim 2 of the '570 Patent.  Claim 2 of the '570 Patent recites:

*2.  The method of claim 1, wherein*

*the second functional marketing element includes an image.*

107

220.    The second functional marketing element includes an image for both the TikTok and CapCut applications.



221.    Defendants infringe Claim 3 of the '570 Patent. Claim 3 of the '570 Patent recites:

*3. The method of claim 2, further comprising receiving, from the first user, the image.*

222.    The image is received from the first user for both the TikTok and CapCut applications.



223.    Defendants infringe Claim 4 of the '570 Patent.  Claim 4 of the '570 Patent recites:

*4.  The method of claim 1, wherein*

*the computer hardware system is a server system.*

224.    The computer hardware system is a server system for both the TikTok and CapCut applications.





225.    Defendants infringe Claim 5 of the '570 Patent.  Claim 5 of the '570 Patent recites:

*5.  The method of claim 4, wherein*

*the server system is a webpage implementation server system.*

226.    The server system is a webpage implementation server system for both the TikTok and CapCut applications.





227.    Defendants infringe Claim 6 of the '570 Patent.  Claim 6 of the '570 Patent recites:

*6. The method of claim 1, wherein*

*the first website includes one or more web pages.*

228.    The first website includes one or more web pages for both the TikTok and CapCut applications.



229.    Defendants infringe Claim 7 of the '570 Patent.  Claim 7 of the '570 Patent recites:

*7. The method of claim 1, further comprising*

*receiving, from the first user, a search request for web assets.*

230.    Defendants' servers receive, from the first user, a search request for web assets.  This holds true for both the TikTok and CapCut applications.

search request in search field    first entity (e.g., user) can select web asset    web asset is inserted into first website (e.g., profile of user)

   

search request in search field    first entity (e.g., user) can select web asset    web asset is inserted into first website (e.g., profile of user)

   

231.    Defendants infringe Claim 8 of the '570 Patent.  Claim 8 of the '570 Patent recites:

> *8.  The method of claim 1, further comprising*
> *inserting, into the first website, a web asset authored by a third party separate from the computer hardware system.*

232.    Defendants' servers insert in the first website a web asset authored by a third party separate from the computer hardware system. This is true for both the TikTok and CapCut applications.





233.    Defendants infringe Claim 10 of the '570 Patent.  Claim 10 of the '570 Patent recites:

*10.  The method of claim 1, further comprising:*

*generating, based upon input provided by the first user, the first website; and*

*generating, based upon input provided by the second user, the second website.*

234.    Defendants' servers generate the first website based upon input provided by the first user and generate the second website based upon input provided by the second user. This holds true for both the TikTok and CapCut applications.





235.    All the above constitute acts of past and continuing infringement by Defendants of asserted Claims 1-8 and 10 of the '570 Patent.


## REQUEST FOR RELIEF

DiStefano respectfully requests that this Court as follows:


A.    Enter a judgment that Defendants have infringed one or more asserted claims of each of the Patents-in-Suit pursuant to 35 U.S.C. §§ 271(a), 271(b), and/or 271(c);

B.    Enter a judgment declaring that any continued manufacture, use, offer for sale, sale, and/or importation of Accused Products, by Defendants would constitute infringement of one or more asserted claims of each of the Patents-in-Suit pursuant to 35 U.S.C. §§ 271(a), 271(b), and/or 271(c);

C.    Enter an order, pursuant to 35 U.S.C. § 284, awarding all damages to DiStefano, not less than a reasonable royalty, including pre-judgment and post-judgment interest and costs, in an amount adequate to compensate DiStefano for Defendants' infringement of the Patents-in-Suit;

D.    Enter judgment that Defendants' infringement of the '316 and the '971 Patents-in-Suit is willful and that damages shall be tripled pursuant to 35 U.S.C § 284;

E.      Enter an order for a post-judgment equitable accounting of damages owed to DiStefano for the period of infringement of the Patents-in-Suit following the period of damages established at trial;

F.      Enter an order, pursuant to 35 U.S.C. § 285, declaring this to be an exceptional case and thereby awarding to DiStefano its reasonable attorneys' fees, expenses, and costs incurred in this action; and

G.      Enter an order awarding to DiStefano such other and further relief, whether at law or in equity, that this Court seems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Distefano hereby requests a trial by jury on all issues so triable.

Dated: October 29, 2024                    Respectfully submitted,

/s/ *Robert P. Hart*

Robert P. Hart
Texas Bar No. 24062399
**ADDYHART P.C.**
2025 Guadalupe Street, Suite 260
Austin, TX 78705
949.337.0568
robert@addyhart.com

Meredith Martin Addy (*pro hac vice forthcoming* )
**ADDYHART P.C.**
10 Glenlake Parkway
Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com

Benjamin Cappel (*pro hac vice forthcoming*)
**ADDYHART P.C.**
401 Michigan Avenue
Suite 1200-1
Chicago, Illinois 60611
732.991.7285
benjamin@addyhart.com

***Attorneys for Plaintiff***
***DiStefano Website Innovations, LLC***

118

**CERTIFICATE OF SERVICE**

I certify that this document has been filed and served through the Electronic Case Filing System of the United States District Court for the Eastern District of Texas.

October 29, 2024                                   *s/ Robert Hart*
                                                    Robert Hart

a