UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DISTEFANO WEBSITE INNOVATIONS, LLC,

Plaintiff,

v.

BYTEDANCE LTD, et al.,

Defendants.

Case No. 5:25-cv-10578-EKL

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 105

The two patents in this case relate to website construction. Plaintiff DiStefano Website Innovations, LLC alleges that Defendants Bytedance Inc., TikTok Inc., and related entities own and operate three applications that infringe on Plaintiff's patents.[1] Defendants move to dismiss Plaintiff's amended complaint for patent infringement, asserting that the claims for which Plaintiff claimed infringement are not eligible for patent protection under 35 U.S.C. § 101. Having carefully reviewed the parties' briefs and heard argument on June 17, 2026, the Court GRANTS Defendants' motion to dismiss without leave to amend.

## I. BACKGROUND

Defendants own three applications: TikTok, which "allows users to create and share short-form mobile videos," Am. Compl. ¶¶ 91, 92, ECF No. 102 ("Am. Compl."), CapCut, which allows users to edit videos, *id.* ¶ 95; and Lemon8, which allows users to share videos and photos; *id.* ¶ 96. Plaintiff is a limited liability company that owns the two patents at issue: U.S. Patent Nos. 11,763,316 ("'316 Patent") and RE45,971 ("'971 Patent"). *Id.* ¶¶ 1, 2; Chung Decl., Ex. 1, ECF

[1] Defendants named in this action are: ByteDance Ltd., ByteDance Inc., ByteDance Pte. Ltd., TikTok Ltd., TikTok, Inc., TikTok USDS Joint Venture LLC, and Heliophilia Pte. Ltd.

United States District Court
Northern District of California

106-1 ("'316 Patent"); Ex. 2, ECF No. 106-2 ("'971 Patent").[2] Both patents were invented by Thomas DiStefano III. Am. Compl. ¶ 27. As described in the amended complaint, DiStefano invented the patents to address "how difficult it was for a layperson to create his or her own websites and web pages." *Id.*

**A. '316 Patent**

The '316 Patent describes a method for "assisting a website designer in establishing an arrangement between a first website . . . and a second website[.]" by creating "reciprocal" hyperlinks on each site. '316 Patent, col. 3, ll. 18-20; *see also id.,* cl. 3. The application for the '316 Patent was filed on July 29, 2013. Am. Compl. ¶ 48. After the application was filed, the USPTO "serially rejected" the claims under 35 U.S.C. § 101. *Id.* ¶ 70. In one of these rejections, the USPTO stated that "[f]acilitating a reciprocal agreement" was an abstract idea, and therefore ineligible for patent protection under Section 101. *Id.* In response, Plaintiff filed three amendments, adding new claims and arguing that the new claims met the requirements of Section 101. *Id.* ¶ 71 (discussing Compl., Ex. 13, ECF No. 1-13; *id.*, Ex. 14, ECF No. 1-14; *id.*, Ex. 15, ECF No.1-15). In June 2023, a patent examiner issued a notice of allowance, *id.* ¶ 71, and the USPTO issued the '316 Patent on September 19, 2023. '316 Patent.

Of the claims at issue from the '316 Patent, claim 1 is the only claim alleged to be independent. Am. Compl. ¶ 89. Claim 1 recites the following:

> A method performed within and by a server system configured to modify and serve web pages, comprising:
>
> receiving, from a first client device associated with a first user and via a graphical user interface associated with the server system, information indicating a selection of a web asset to be used in a first web site;

---

[2] Plaintiff did not attach the '316 or '971 Patents to its amended complaint. Defendants included these patents, as well as U.S. Patent No. 8,768,760, as exhibits to their motion to dismiss. *See* Chung Decl., Ex. 3, ECF 106-3. In ruling on a motion to dismiss, courts generally do not consider material outside the pleadings. *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). However, courts may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court takes judicial notice of all three patents because they are publicly available documents and the parties do not contest their authenticity.

> receiving, from the first client device and via an editing screen of the graphical user interface, an instruction to modify the web asset to generate an edited web asset;
>
> generating, based upon the instruction, the edited web asset;
>
> forwarding, to the first client device and to be displayed by the graphical user interface, one or more identifiers respectively associated with one or more previously-created websites that were previously-created by one or more other users of the server system;
>
> receiving, from the first client device and via the graphical user interface, a first identification indicating a selection of a second website from the one or more previously-created websites to create a first hyperlink from the first web site to the second web site;
>
> storing, within a computer database system of the server system, first information indicating that the first identification was received by the server system;
>
> modifying, based upon the instruction, the first website to include the edited web asset;
>
> modifying, based upon the first information indicating that the first identification was received, the first website to include the first hyperlink;
>
> modifying, based upon the first information indicating that the first identification was received, the second web site to include a reciprocal second hyperlink to the first web site; and
>
> serving computer data associated with the first website that includes the edited web asset and the first hyperlink from the first web site to the second web site, wherein the server system is configured to host the first web site and the second website, the editing screen is configured to display the web asset, and the graphical user interface includes a primary display screen configured to display the edited web asset based upon the instruction.

’316 Patent, cl. 1.

Claims 3-9, 11, and 13 of the ’316 Patent depend on claim 1. As relevant here, these claims add the following limitations: (1) configuring the graphical user interface to receive the “first identification” of a second website to be linked, ’316 Patent, cl. 3; (2) configuring the graphical user interface to present a graphical widget next to an “identifier” for a website, *id.*, cl. 4; (3) using the server system to identify websites based on “a request generated by the graphical user interface,” *id.*, cl. 5; (4) configuring the graphical user interface to identify a website based on user input, *id.*, cl. 6; (5) identifying a website based on identifiers such as a

user's name, email address, or hobby, *id.*, cl. 7; (6) identifying multiple websites by searching via a search engine previously-provided user information, *id.*, cl. 8 (7) requiring users to register with the server system, *id.*, cl. 9; (8) requiring the first web site to include "a plurality of web pages," *id.*, cl. 11; and (9) configuring the server system to create "reciprocal link sites" on two webpages from different websites, *id.*, cl. 13.

### B. '971 Patent

The '971 patent outlines a method to "establish[] an arrangement" between two websites "in order to market the first website at the second website." '971 Patent, col. 3, ll. 8-13. The application for the '971 Patent was filed on August 9, 2013. *Id.* ¶ 52. The '971 Patent is a reissuance of U.S. Patent No. 7,996,259 ("'259 Patent"). '971 Patent. As part of the reissue proceedings, the USPTO considered whether the '971 Patent was patent eligible under Section 101. Am. Compl. ¶ 61. The USPTO concluded that the claims "as a whole, 'amount[] to significantly more than the abstract idea.'" *Id.* (quoting Compl., Ex. 11, ECF No. 1-11). The USPTO issued the '971 Patent on April 12, 2016. '971 Patent.

Of the claims at issue from the '971 Patent, two are independent claims: claims 4 and 8. Am. Compl. ¶¶ 86-87. Claim 4 recites:

> A method, within a computer hardware website implementation system, of establishing a reciprocal arrangement between a first website and a preexisting second website, comprising:
>
> registering the second website with the website implementation system;
>
> receiving, by the website implementation system, a request by a first user to implement the first website:
>
> receiving, by the website implementation system, a selection by the first user as to a second functional marketing element to be activated on the second website;
>
> establishing, by the website implementation system, a reciprocal site in the first website for a first functional marketing element; and
>
> upon the first website being activated with respect to the internet, the computer website implementation system implementing the reciprocal arrangement by causing
>
> (i) the first website to implement the first functional marketing element, and



United States District Court
Northern District of California

> (ii) the second website to implement the second functional marketing element, wherein the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second website, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first website.

'971 Patent, cl. 4.

Claim 8 of the '971 Patent recites the following:

> A method, within a computer hardware web page implementation system, of establishing a reciprocal arrangement between a first web page, associated with a first user; and a second web page, comprising:
>
> generating, by the web page implementation system, a second functional marketing element, associated with the first user to be activated on the second web page;
>
> establishing, by the web page implementation system, a reciprocal site in the first web page for a first functional marketing element; and
>
> implementing, by the webpage implementation system and upon the first web page being activated with respect to the internet, the reciprocal arrangement by causing
>
> (i) the first web page to implement the first functional marketing element, and
>
> (ii) the second web page to implement the second functional marketing element, wherein the first functional marketing element directs, via the internet, a second user of the first functional marketing element to the second web page, and the second functional marketing element directs, via the internet, a third user of the second functional marketing element to the first web page.

'971 Patent, cl. 8.

As relevant here, claims 9, 12, and 13 depend on claim 8, and add the following limitations to claim 8: (1) "including, within the first web page, a web asset provided by a third party separate from the computer hardware system," '971 Patent, cl. 9; (2) including an image in the "second functional marketing element," *id.,* cl. 12; and (3) receiving the aforementioned image from a user of the first web page, *id.*, cl. 13.

### C. Procedural History

Plaintiff first sued Defendants ByteDance, Ltd., ByteDance, Inc., Bytedance Pte. Ltd., TikTok Ltd., TikTok, Inc., and Heliophilia Pte., Ltd. in July 2024 in the Western District of Texas,



United States District Court
Northern District of California

alleging that these applications infringed on certain claims from five of Plaintiff's patents. *DiStefano Website Innovations, LLC v. ByteDance Ltd.*, 1:24-cv-00763 (W.D. Tex.), ECF No. 1. On October 29, 2024, Plaintiff dismissed its complaint in the Western District of Texas. *DiStefano Website Innovations, LLC v. ByteDance Ltd.*, 1:24-cv-00763 (W.D. Tex.), ECF No. 31. Plaintiff then filed a complaint against the same defendants (except for TikTok Inc.) in the Eastern District of Texas, again alleging that the defendants infringed on claims from five of Plaintiff's patents. *DiStefano Website Innovations, LLC v. ByteDance Ltd.,* No. 2:24-cv-00874 (E.D. Tex.), ECF No. 1. On November 10, 2025, the district court granted the defendants' unopposed motion to transfer venue to the Northern District of California. *DiStefano Website Innovations, LLC v. ByteDance Ltd.,* No. 2:24-cv-00874 (E.D. Tex.), ECF No. 73.

On March 12, 2026, Plaintiff filed an amended complaint, adding as defendants ByteDance, Inc., TikTok, Inc., and TikTok USDS Joint Venture LLC. Am. Compl. Plaintiff alleges that Defendants infringed claims 1, 3-9, 11, and 13 of the '316 Patent and claims 4, 8-9, and 12-13 of the '971 patent. *See id.* ¶¶ 130, 159. On March 25, 2026, Defendants moved to dismiss, on the basis that the claims at issue are not patent eligible under Section 101 for two separate but related reasons: (1) the claims at issue do not satisfy the two-step inquiry for patent eligibility articulated in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014); and (2) the district court in *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616 (D. Del. 2018) ("*LinkedIn*") already found several claims from U.S. Patent No. 8,768,760 ("*LinkedIn* Patent") to be patent ineligible and, thus issue preclusion applies because the '316 and '971 Patents are related to the *LinkedIn* Patent.[3] Mot. to Dismiss, ECF No. 105 ("Mot."). Plaintiff opposed the motion to dismiss.[4] Opp., ECF No. 115. The Court heard oral argument on June 17, 2026.

---

[3] The *LinkedIn* patent "describes a method of creating a reciprocal arrangement between two websites in order to market the first website at the second website." *LinkedIn*, 346 F. Supp. 3d at 619. The district court in *LinkedIn* dismissed the plaintiff's claims for patent infringement after finding that *LinkedIn* Patent was not patent-eligible. *Id.* The district court found that the asserted claims were directed to a patent-ineligible concept and did not contain an inventive concept. On appeal, the Federal Circuit affirmed the district court's decision. *DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*, 784 F. App'x 785 (Fed. Cir. 2019). Because the *LinkedIn* Patent is in the same family as the patents at issue, the Court considers the well-reasoned opinion in *LinkedIn*.

[4] After Plaintiff filed its opposition to the motion to dismiss, and Defendants filed their reply in

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

"[I]n many cases, it is possible and proper to determine patent eligibility under § 101 on a Rule 12(b)(6) motion . . . even before a formal claim construction." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). "Dismissal at this early stage, however, is appropriate 'only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

---

support on the motion to dismiss, Reply, ECF No. 116, Plaintiff filed a motion for leave to file a sur-reply. Mot. for Leave to File Sur-Reply, ECF No. 117. Plaintiff asserted that a sur-reply was necessary because Defendants had raised new cases and "purported admissions" by Plaintiff in their reply. *Id.* On review of Defendants' reply, the Court did not identify any new evidence or arguments that require a response from Plaintiff. The Court DENIES Plaintiff's motion for leave to file a sur-reply. The Court notes that even with Plaintiff's sur-reply, the Court's analysis would not change.



United States District Court
Northern District of California

United States District Court
Northern District of California

**B. Section 101**

Patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. However, "important implicit exception[s]" to Section 101 are "[l]aws of nature, natural phenomena, and abstract ideas." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 589 (2013)). To determine whether a patent claims a patent-ineligible concept, the Court follows the two-step inquiry described by the Supreme Court in *Alice* and *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012).

At the first step, courts "look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) (citation modified). In the context of computers, a claim must be directed to improving computer functionality, rather than "an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2020) (citation modified). The first step of the *Alice* inquiry is "a legal question that can be answered based on the intrinsic evidence," that is, "the patent claims in view of the plain claim language, statements in the written description, and the prosecution history, if relevant." *CardioNet LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint*, 920 F.3d at 766.

If the claimed advance is aimed at an abstract idea or other patent-ineligible subject matter, courts then proceed to the second *Alice* step: determining whether "an element or combination of elements" constitutes "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 218, 221 (quoting *Mayo*, 566 U.S. at 72). "Non-conventional and non-generic arrangement of known, conventional pieces" may qualify as an inventive concept. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In the context of computers, generic computer components "perform[ing]

their routine and conventional functions" are not considered "eligibility-transformative inventive concept[s]." *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 934 (Fed. Cir. 2020).

Whether "claims recite an inventive concept or something more than well-understood, routine, conventional activities previously known to the industry may turn on underlying questions of fact." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (first quoting *Alice*, 573 U.S. at 225, and then quoting *Aatrix*, 882 F.3d at 1128) (citation modified). In some instances, "specific, plausible factual allegations" that a claim's elements constitute an inventive concept may be sufficient to avoid dismissal. *Id.* at 1317-18.

"The decisional mechanism courts now apply to Section 101 cases is to examine earlier cases in which a similar or parallel descriptive nature can be seen." *Beteiro, LLC v. DraftKings, Inc.,* 104 F.4th 1350, 1356 (Fed. Cir. 2024) (quoting *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016)) (citation modified). A court may also consider the well-reasoned deliberations of the USPTO, but is not required to defer to the USPTO's determinations as to eligibility. *Sanderling Mgmt. Ltd. v. Snap, Inc.* 65 F.4th 698, 705 (Fed. Cir. 2023).

## III. DISCUSSION

In its analysis of whether the claims are patent eligible under Section 101, the Court focuses on the claims identified by Plaintiff as independent claims: claims 4 and 8 of the '971 Patent, and claim 1 of the '316 Patent. Am. Compl. ¶¶ 86-87, 89. On its review of all claims at issue, the Court notes that the independent and dependent claims "require performance of the same basic process," and therefore their patent eligibility "should rise or fall together."[5] *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.5 (Fed. Cir. 2017) (quoting *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013)).

---

[5] The parties have not identified any claim construction issues that would preclude a determination of the claims' eligibility under Section 101. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016); *Sanderling Mgmt. Ltd. v. Snap, Inc.* 65 F.4th 698, 704 (Fed. Cir. 2023) (affirming grant of dismissal when party did not provide proposed construction for contested terms).



United States District Court
Northern District of California

Plaintiff asserts that dependent claims 4, 8 and 13 of the ’316 Patent must be separately analyzed because they contain “additional technical improvement/inventive concepts.” Opp. at 23-24. The Court reviews these claims as well, but notes that courts are not required to accept “conclusory assertion[s]” that dependent claims differ significantly from independent ones.. *Evolutionary Intel., LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157, 1165 n.6 (N.D. Cal. 2015), *aff’d*, 677 F. App’x 679 (Fed. Cir. 2017).

**A. *Alice* Step One**

The first step of *Alice* looks at whether the claims are directed to a patent-ineligible concept by assessing the “focus of the claimed advance over the prior art” and whether that focus is on a patent-ineligible abstract idea. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (quoting *Affinity Labs of Tex., LLC*, 838 F.3d at 1257) (citation modified).

The Court finds that the claimed advances in both the ’316 Patent and the ’971 Patent focus on an abstract idea: reciprocal arrangements between websites, which is a form of cross-marketing. This is evidenced by the text of the independent claims, which repeatedly mention reciprocal arrangements: (1) claim 4 of the ’971 Patent states that it is “[a] method . . . of establishing a reciprocal arrangement between a first website and a preexisting second website”; (2) claim 8 of the ’971 Patent states that it is “[a] method . . . of establishing a reciprocal arrangement between a first web page, associated with a first user; and a second web page”; and (3) claim 1 of the ’316 Patent states that it is a “method” in which “a first website” is to include a hyperlink and the “second website” is to include a “ reciprocal second hyperlink to the first website.”

These statements all describe reciprocal arrangements that happen to take place over the internet. But there is nothing distinct about this process; two physical shops could also enter a reciprocal arrangement to promote each other’s businesses. Thus, the claims address cross-marketing, “a fundamental economic practice” that falls “beyond the scope of [Section] 101.” *Alice*, 573 U.S. at 219-20; *see also Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (finding that the claimed method of screening messages was an abstract idea);

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) (affirming the USPTO's finding that the idea of "taking orders from restaurant customers on a computer" was abstract). Similar claims to those at issue here have been found to address an abstract idea. In *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, the asserted claims described "a reciprocal linking arrangement" between two web pages. 346 F. Supp. 3d at 623. The district court determined that the claims addressed "the hassle of matchmaking" and did "not become patent-eligible simply through computer implementation." *Id.* at 623-24. The same logic applies here: the claims are directed to the abstract idea of matchmaking, rather than any technical issue.

The additional limitations in the independent claims do not have "the specificity required to transform [the] claim[s] from . . . claiming only a result to . . . claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under [Section] 101."). For example, claim 4 of the '971 Patent states in part: "the computer website implementation system" will cause "the first website to implement the first functional marketing element, and the second website to implement the second functional marketing element[.]" But claim 4 does not provide any details on *how* to implement a functional marketing element – it simply says that this element will be implemented. Similarly, claim 5 of the '316 Patent states that a "server system" will be configured to "identify" a previously-created website, without any explanation about said configuration. In other words, these claims are reciting what a reciprocal arrangement will look like, rather than describing the process to achieve that abstract idea. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1364-65 (Fed. Cir. 2021) (finding that a claim about data rendering was directed to an abstract idea because the claim did not describe "how targeted data is rendered."); *Software Rts. Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1108 (N.D. Cal. 2020) (concluding that claims are directed to abstract ideas because claims recite "broad functions," such as "generating" links, that "provide only a results-oriented solution." (citation modified)).

A closer look at the limitations of the dependent claims in the '316 Patent, as Plaintiff urges, does not change the Court's conclusion. Opp. at 23-24. As described by Plaintiff, claim 4 "recite[s] a graphical widget used with the graphical user interface to be used to receive a user-initiated selection," claim 8 describes a "graphical user interface" that uses a search engine to identify previously-created websites, and claim 13 describes a server system "configured to create [a] first reciprocal link site for the first hyperlink and create a reciprocal link site for the second hyperlink." *Id.* at 24. Plaintiff does not provide any explanation why these limitations "meaningfully impact the patent eligibility analysis." *EcoFactor, Inc. v. Google LLC*, 757 F. Supp. 3d 978, 985 (N.D. Cal. 2024). On review of the dependent claims, the Court can only conclude that these limitations are "minor restrictions." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1146 (N.D. Cal. 2017). Fundamentally, their focus is the same as that of the independent and other dependent claims in the '316 Patent: the creation of reciprocal arrangements.

Plaintiff argues that the asserted claims do not concern an abstract idea because they "improve the process of creating websites/web pages having specific features, such as links." Opp. at 12 (quoting Am. Compl. ¶¶ 72-78). Improvement to the website creation process is mentioned in both patents' specifications – they explain that the average individual has "little or no knowledge about how to create a web page" and that "a streamlined method for web page/website development" is needed. '316 Patent col. 2 ll. 5-6; '971 Patent col. 1 ll. 1-2.. However, the language of the *claims* governs, and "concepts from the specifications" cannot be "import[ed] . . . into the claims." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024). Plaintiff points to no language in the claims that support its asserted claimed advance.

But even assuming that Plaintiff's claimed advance was improving the process of website creation, the claims still would not satisfy *Alice* step one. They would remain directed to an abstract idea: a user's inexperience with HTML, which is a human, and not a technological, problem. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (noting that improving the experience of a user "who cannot (or maybe, would rather not) use

programming" does not amount to improving the *computer's* functionality); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1089-90 (Fed. Cir. 2019) (finding that an invention that helps traders become more efficient "is not a technical solution to a technical problem"); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1381, 1384-85 (Fed. Cir. 2019) (concluding that a method to provide information more quickly to traders is not a patent-eligible improvement to computer functionality).[6]

Plaintiff argues that the claims here are indistinguishable from those in *DDR Holdings* and *Core Wireless*, which the Federal Circuit determined were patent-eligible under *Alice* step one. Opp. at 12-14 (first citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014); and then *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018)). But in both cases, the Federal Circuit found that the claims at issue were directed to upgrades to a computer's functionality, rather than to an abstract idea or other patent-eligible subjects that happened to be implemented on a computer. In *DDR Holdings*, the Federal Circuit determined that the claims "[did] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings*, 773 F.3d at 1257. Instead, the claimed solution "[was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks[]" – *i.e.*, the loss of website visitors who, after clicking on an advertisement, were "transported away" from the host website. *Id.* Similarly, in *Core Wireless*, the claims were directed at a problem unique to computers – *i.e.*, how to physically display a limited set of information, even for computers with small screens. *Core Wireless*, 880 F.3d at 1362-63. In contrast, the claims here, like in *Alice*, are directed to "the hassle of matchmaking" between

---

[6] Plaintiff argues that the claims do not preempt the concept of reciprocal hyperlinks, and this lack of preemption weighs in favor of patent eligibility. Opp. at 13-14. However, while the claims may not preempt all permutations of "facilitating cross-marketing relationships," *id.* at 14, the lack of preemption "does not make [the claims] any less abstract. *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015).

human beings. *LinkedIn*, 346 F. Supp. 3d at 624; *see also Alice*, 573 U.S. at 219, 224. They are not rooted in problems unique to technology.

**B. *Alice* Step Two**

Because the claimed advance of reciprocal arrangements is an abstract idea, the Court next considers the second step of the *Alice* test: whether a claim's elements – "individually" or "as an ordered combination" – transform the claimed abstract idea "into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79).

Plaintiff does not fare better here than at *Alice* step one. The claims do not describe any inventive concept consisting of individual elements or an ordered combination thereof. Claims that "recite the abstract idea . . . along with the requirement to perform it on the [i]nternet, or to perform it on a set of generic computer components" do not constitute an inventive concept. *BASCOM*, 827 F.3d at 1350. The claims at issue do precisely that – they discuss reciprocal arrangements and invoke computer elements to implement said reciprocal arrangements, without describing how any element would be used in an innovative way. *See, e.g.*, '316 Patent, cl. 1 (describing how a server system receives information "indicating a selection of a web asset" via a "graphical user interface"); *id.,* cl. 11 (describing "the first web site" as having a "plurality of web pages"); '971 Patent, cl. 4 (describing website registration, activation by "website implementation system," and the use of "functional marketing elements" to direct users to websites); *id.*, cl. 12 (describing a "functional marketing element" as "includ[ing] an image").

The generic nature of these computer elements is confirmed by the patents' specifications, which state that these components and methods are well-known in the industry. *See, e.g.*, '316 Patent at col. 5 ll. 57-59, 64-67 (stating that the method of "developing a website through the use of a graphical user interface" can "preferably can be implemented through the use of the server computer using standard computer programming techniques well-known in the art."); '971 Patent at col. 5 ll. 41-42, 48-51 (same); *see also BASCOM*, 827 F.3d at 1349 (identifying local computers, ISP servers, networks, and network accounts as "generic computer components").

In theory, the claims could still be patent-eligible if they "recite[d] a specific, discrete implementation" of the abstract idea and "describe[d] how [their] particular arrangement of

elements is a technical improvement over prior art ways[.]" *BASCOM*, 827 F.3d at 1350. At oral argument, Plaintiff stated that paragraphs 77 and 79 of its amended complaint alleged an "unconventional" combination of elements that improves over prior art – specifically, that the "limitations as a whole" together described how "a single computer system [] both create the websites and contain the reciprocal links that serve those sites." Hr'g Tr. 29:15-19; 34:48, ECF No. 124. But the choice to use one computer (as opposed to multiple computers) does not represent an advance in computer capabilities. "An improved result, without more stated in the claim, is not enough to confer eligibility." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019); *see also Free Stream*, 996 F.3d at 1366 (finding no inventive concept when claims did not disclose anything that was "previously not possible."); *Trinity Info Media*, *LLC v. Covalent, Inc.,* 72 F.4th 1355, 1366 (Fed. Cir. 2023) (concluding that the use of multiple servers is not an inventive concept); *Elec. Power Grp.*, 830 F.3d at 1356 (noting that claims do not contain an inventive concept because they "do not include any requirement for performing the claimed functions . . . by use of anything but entirely conventional, generic technology."). Plaintiff provides no other possible "specific, discrete implementation" of the abstract idea. *BASCOM*, 827 F.3d at 1350.

Plaintiff's attempt to rely on *DDR Holdings* at step two of *Alice* is misplaced.[7] The patents in *DDR Holdings* purported to solve a specific problem: retaining website users who clicked on third-party advertisements. *DDR Holdings*, 773 F.3d at 1257. The patents detailed a specific process to ensure that visitors who clicked on those ads saw the relevant content on the host website instead of being "instantly transported away" to the advertiser's website. *Id.* The Federal Circuit specifically found the claims in *DDR Holdings* to be patent-eligible because the claim limitations described an invention that was *not* the "routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* Here, Plaintiff acknowledges that "the generation of reciprocal links . . . was known (conventional)" when these claims were invented.

---

[7] Plaintiff's invocation of *Core Wireless* for this reason is also misplaced. In that case, the Federal Circuit, finding the claims patent-eligible at *Alice* step one, did not reach *Alice* step two. *Core Wireless*, 880 F.3d at 1363.

Am. Compl. ¶ 83. Plaintiff provides no indication that the claims do anything more than "recit[ing] an invention that is . . . merely the routine or conventional use of the [i]nternet." *DDR Holdings*, 773 F.3d. at 1258.

*BASCOM* is instructive. The claims at issue in *BASCOM* described a method of filtering internet content that could be customized at a computer-by-computer level, rather than applying a "one-size-fits-all" filter across a server. *BASCOM*, 827 F.3d at 1343-44. The Federal Circuit found these claims to be patent-eligible, despite including generic components, because the claims "recite[d] a specific, discrete implementation of the abstract idea of filtering content." *Id.* at 1349-50; *cf. Symantec*, 838 F.3d at 1318 (finding that claims patent-ineligible when implementation is "routine and conventional" and "each step does *no more than require* a generic computer to perform generic computer functions." (quoting *Alice*, 573 U.S. at 225)). In contrast, the claims here implement an abstract idea by "simply using generic computer components in a conventional way." *BASCOM*, 827 F.3d at 1352.

In addressing *Alice* step two, Plaintiff leans heavily on the Court's obligation at the motion to dismiss stage to presume that well-pled allegations are true. Plaintiff cites to its allegations about "the unconventionality of the claimed combination of elements" and argues that those allegations must preclude dismissal. Opp. at 16 (citing Am. Compl. ¶¶ 83-84); Hr'g Tr. 34:10-22. Plaintiff is correct that "plausible and specific factual allegations that aspects of the claims are inventive" may be sufficient to justify denying a motion to dismiss. *Cellspin*, 927 F.3d at 1317-18. But Plaintiff's allegations do not allege any facts – they merely repeat legal conclusions. Am. Compl. ¶¶ 83, 84 (stating that the claims "contain an ordered combination of elements that are not well-understood, routine, and conventional" and include "significantly more than these abstract ideas").

Plaintiff's allegations stand in contrast to *Aatrix*, where the complaint specifically alleged that the claimed invention would improve a computer's short-term and long-term storage. *Aatrix*, 882 F.3d at 1127. The Federal Circuit understood the allegations in *Aatrix* as claiming "improvements to the functioning and operation of the computer," as opposed to "generic components performing conventional activities." *Id.* at 1127-28; *see also Sanderling*, 65 F.4th

at 705 (affirming that district court was "not required to accept Plaintiff's generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage") (citation modified)); *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021) (affirming dismissal when "there were no concrete or specific allegations in [the] complaint or discussions in the specification regarding any improvements in technology") (citation modified); *cf. Cellspin*, 927 F.3d at 1317-18 (vacating dismissal when patentee "made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional").[8] Because Plaintiff's claims only recite "generic components performing conventional activities," Plaintiff's claims fail at *Alice* step two and are therefore patent-ineligible.[9] *Aatrix*, 882 F.3d at 1127-28.

**C. Leave to Amend**

Plaintiff requests leave to amend, citing the Ninth Circuit's policy of granting leave to amend "with extreme liberality." Opp. at 24 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). However, eligibility for patent protection ultimately rests on the language of the patent itself, and "[n]o amendment to the complaint can alter" what the patents themselves say. *U.S. Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1380 (Fed. Cir. 2026); *LaVoult.com, LLC v. Meta Platforms, Inc.*, 777 F. Supp. 3d 1072, 1084 (N.D. Cal. 2025); *see also Semiconductor Design Techs., LLC v. Cadence Design Sys., Inc.*, 735 F. Supp. 3d 1162, 1169 (N.D. Cal. 2024). Because the claims fail both *Alice* steps based on the intrinsic evidence, amendment would be futile and dismissal with prejudice is appropriate. *Sanderling*, 65 F.4th at 705-706.

---

[8] In its opposition, Plaintiff also cites numerous paragraphs in the amended complaint describing prior art, which, according to Plaintiff, counter Defendants' assertion that there is no inventive concept in the claims. Opp. at 15 (citing Am. Compl. ¶¶ 39-46). But novelty of an element or process, as compared to prior art, "does not resolve the question of whether the claims embody an inventive concept at the second step of *Mayo/Alice*." *Symantec*, 838 F.3d at 1315. The question under *Alice* step two is whether there is an inventive concept beyond the otherwise patent-ineligible subject matter (not prior art). *Id.* Thus, it is possible for claims to "pass[] muster under 35 U.S.C. §§ 102 and 103" but remain ineligible under Section 101. *SAP*, 898 F.3d at 1163; *see Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea.").

[9] Because the Court finds that Plaintiff's claims are patent-ineligible under *Alice* steps one and two, the Court does not reach whether issue preclusion from the *Linkedin* decision applies.



United States District Court
Northern District of California

**IV. CONCLUSION**

For the foregoing reasons, the Court DISMISSES with prejudice and without leave to amend.

**IT IS SO ORDERED.**

Dated: November 6, 2026



Eumi K. Lee
United States District Judge